**PRAYZE FM a/k/a Incom, LLC and Mark Blake, Plaintiffs,**

**v.**

**UNITED STATES of America, Federal Communications Commission, Defendant.**

**United States of America, Federal Communications Commission, Plaintiff,**

**v.**

**Prayze FM a/k/a Incom, LLC and Mark Blake, Defendants.**

Nos. 3:98CV375(WWE), 3:98CV529(WWE).

United States District Court, D. Connecticut.

Nov. 8, 1999.

Richard S. Order, Robert Reginald Simpson, Craig Lyle Perra, Updike, Kelly & Spellacy, P.C., Hartford, CT, Robert T. Perry, Barbara J. Olshansky, New York City, for Plaintiffs.

Alan M. Soloway, U.S. Attorney's Office, New Haven, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION

EGINTON, Senior District Judge.

Pursuant to Fed.R.Civ.P. 65, defendant Federal Communications Commission ("FCC"), seeks an order preliminarily enjoining plaintiffs Prayze FM, Incom LLC, Mark Blake and all persons acting in concert with them from making radio transmissions within the United States until they first obtain a license from the FCC or other appropriate authorization in accordance with 47 U.S.C. sec. 301 *et seq.* For the reasons below, defendant's motion is GRANTED.

### FACTS

In December 1996, the Field Office of the Compliance and Information Bureau of the FCC in Boston, Massachusetts, began an investigation into the existence of a possible unlicensed FM radio station transmitting from the Bloomfield, Connecticut area. Alerted from newspaper clippings, telephone calls and written correspondence, the FCC discovered a transmission on the frequency 105.3 MHZ identifying itself as Prayze FM and WPRZ. As of December 1996, the FCC had not authorized any radio station to operate in the Bloomfield, Connecticut area with the call sign WPRZ on 103.5 MHZ.

On March 4, 1997, an FCC engineer located the source of the radio source transmission to be in the vicinity of 701 Cottage Grove Road, Bloomfield, Connecticut. On March 19, 1997, the FCC was informed that Prayze FM's transmission was causing interference with one licensed station's signal and having a negative economic impact on another licensed station. On various occasions the FCC engineer measured the strength of the Prayze FM signal and determined that it exceeded the requirements for low power stations provided in the FCC regulations and could be heard approximately ten miles from the broadcasting location. On July 17, 1997, an FCC engineer found the signal strength to be 150 millivolts/meter 150 feet from the base of the antennae, which is 600 times the maximum signal strength authorized for low powered radio operations. On February 12, 1998, the field strength measured to be 80 millivolts/meter 200 feet from the base of the antennae, which is 320 times the maximum signal strength authorized for low powered radio operations.

Despite repeated instruction to first apply and obtain a license before broadcasting, Prayze FM has not made application with the FCC to this date.

### STANDARD

■ In order to obtain a preliminary injunction, the moving party must show (1) irreparable harm, and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the movant's favor. See, e.g. *Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp.*, 25 F.3d 119, 122 (2d Cir.1994); *Bourne Co. v. Tower Records, Inc.*, 976 F.2d 99, 101 (2d Cir.1992); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985); *Padula v. U.S. I.N.S.*, 537 F.Supp 563 (D.Conn.1982); *Stuart v. Nappi*, 443 F.Supp. 1235 (D.Conn.1978).

### DISCUSSION

#### IRREPARABLE HARM

■ Where the government seeks injunctive relief for a statutory violation,

there is a presumption of irreparable harm:

> irreparable harm is presumed where the government seeks to enforce a statutory violation by way of preliminary injunction expressly authorized in favor of the government by that statute.

*United States v. Schmitt,* 734 F.Supp. 1035, 1052 (E.D.N.Y.) (citing *Securities and Exchange Commission v. Management Dynamics,* 515 F.2d 801, 808 (2d Cir.1975)). *U.S. v. State of Connecticut,* 566 F.Supp. 571 (D.Conn.), *aff'd.,* 742 F.2d 1443 (2d Cir.1983). "By making a showing that the plaintiff is engaged in illegal acts, the Commission is seeking to protect the public interest," and the "standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief," *Securities & Exchange Commission,* 515 F.2d at 809 (citing *Hecht Co. v. Bowles,* 321 U.S. at 321, 321, 64 S.Ct. 587 (1944)). "A finding that future violations are likely to occur implies that a significant injury to the public has been shown." *United States v. Diapulse Corp. of America,* 457 F.2d 25, 28 (2d Cir.1972).

Plaintiffs argue, however, that the government is not entitled to a rebuttable presumption of irreparable harm because Prayze FM is contesting the constitutionality of the various FCC regulations which prevent the licensing of low powered radio stations. This Court agrees with the general proposition that the government should not be entitled to the presumption of irreparable harm where the constitutionality of a statute is at issue. *United States v. Nutri–cology, Inc.,* 982 F.2d 394, 398 (9th Cir.1992). The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d

547 (1976). However, this issue is not before the Court. As discussed below, Prayze FM does not have standing as required by Article III of the Constitution to challenge the regulations because the regulations were never applied to Prayze; Prayze FM never applied for a license with the FCC.

## ARTICLE III STANDING

■ In order to invoke federal jurisdiction, a litigant must establish that: (1) the litigant has suffered an actual and concrete injury consisting of "an invasion of a legally protected interest"; (2) there must be a causal connection between the injury and the conduct of which the litigant complains; and (3) there must be a likelihood that the injury will be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ Prayze FM has neither applied for a license nor a waiver to operate its low powered station. Accordingly, the statute challenged has never been applied to Prayze FM. Therefore, because there is no causal connection between the injury and the conduct of which the litigant complains, the plaintiffs do not have standing to raise a constitutional claim at this point of the proceedings. See, e.g., *United States v. Dunifer,* 997 F.Supp. 1235 (N.D.Cal.1998).[1]

■ Returning to the issue of irreparable harm, there is sufficient evidence that a continuing violation of the statute would occur without a preliminary injunction and the continuation of such transmission is the type of harm that Congress intended to prohibit. Therefore, the government is entitled to its presumption of irreparable harm. *Diapulse Corporation of America,* 457 F.2d. at 28.[2]

---

1. In *Dunifer,* the court held that the plaintiff did not have standing to bring an affirmative defense and challenge the constitutionality of a statute when the statute was never applied to him. 997 F.Supp. at 1241.

2. This Court also finds that the Prayze FM has not demonstrated that the threatened injury is not irreparable. See *Current–Jacks Fork Canoe Rental Assoc. v. Clark,* 603 F.Supp. 421, 427 (E.D.Mo.1985) (government's presumption of irreparable harm is rebuttable by evi-

## LIKELIHOOD OF SUCCESS ON THE MERITS

 Title 47 U.S.C. sec. 301 prohibits the operation of any apparatus for the transmission of communications or signals by radio without a license granted by the FCC or other authorized authority. 47 U.S.C. sec. 301, *et seq.* The Communications Act authorizes the issuance of injunctive relief against anyone violating the act or regulations. *United States v. Weiner,* 701 F.Supp. 14 (D.Mass.1988), *aff'd* 887 F.2d 259 (1st Cir.1989). *United States v. McIntire,* 370 F.Supp. 1301 (D.N.J.1974).

There is no dispute that Prayze FM is operating and continues to operate an unlicensed radio station in violation of 47 U.S.C. sec. 301. On four separate occasions, FCC engineer observed violations of 47 U.S.C sec. 301 of the Communications Act where Prayze FM was transmitting at 103.5 MHZ without a license. Plaintiff Mark Blake also acknowledged that he will continue to operate the station despite not having a license. As there is no dispute that the plaintiffs are transmitting in violation of section 301 it is likely that the government will prevail on the merits of its case.

## CONCLUSION

For the foregoing reasons, the government's motion for a preliminary injunction is GRANTED. Prayze FM, INCOM LLC, Mark Blake and all persons acting in concert with them are hereby enjoined from making radio transmissions within the United States until they first obtain a license from the FCC or other appropriate authorization in accordance with 47 U.S.C. sec. 301 *et seq.*

dence that the threatened injury is not irreparable.).