774 F.Supp. 1564 (1991)
Margaret P. GILLEO, Plaintiff,
v.
CITY OF LADUE, et al., Defendants.
No. 90-2396C(7).
United States District Court, E.D. Missouri, E.D.
October 1, 1991.
As Amended Nunc Pro Tunc October 3, 1991.
*1565 Martin M. Green, Mitchell A. Margo, Green, Hoffmann & Dankenbring, Clayton, Mo., for plaintiff.
Jordan B. Cherrick, Armstrong, Teasdale, Schlafly & Davis, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court on Plaintiff's motion for summary judgment and permanent injunction and on Defendant's motion for summary judgment.
On January 7, 1991, 774 F.Supp. 1559, this Court entered an order granting Plaintiff's request for preliminary injunction, restraining Defendants from enforcing Chapter 35 (hereinafter Old Chapter 35), the City of Ladue's sign ordinance. On January 21, 1991, Defendants repealed Old Chapter 35 and enacted a new sign ordinance (hereinafter New Chapter 35).[1] Thereafter Plaintiff amended her complaint and now seeks summary judgment on her request for a permanent injunction against enforcement of New Chapter 35. Plaintiff retains many of the factual allegations relevant only to Old Chapter 35 in her pleading and memorandum in support of summary judgment. Defendants filed a counterclaim seeking a declaratory judgment that New Chapter 35 is valid and enforceable under the Constitution. Defendants seek summary judgment on their counterclaim.
The Court ordered both parties to file memoranda relating to this Court's jurisdiction over the matter. Both parties filed documents before the Court stipulating that New Chapter 35 would not be enforced during the pendency of this suit. See Plaintiff's Second Amended Complaint ¶ 19; Defendants' Joint Answer to Plaintiff's Second Amended Complaint ¶ 19; Defendants' Amended Counterclaim ¶ 15. Subsequent to the Court's order for jurisdictional memoranda, Defendant City of Ladue amended its answer and notified all parties that New Chapter 35 would be enforced. See Defendants' Amendments by Interlineation filed April 22, 1991. Plaintiff filed a memorandum citing United States v. W.T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) and United States Dept. of Agriculture v. FLRA, 876 F.2d 50 (8th Cir.1989). Both cases state that voluntary cessation of allegedly illegal conduct does not make a case moot. In W.T. Grant Co., the Supreme Court stated that defendants would be free to return to their old ways if Courts dismissed as moot cases where the defendant voluntarily ceased the allegedly illegal conduct. W.T. Grant, 345 U.S. at 632, 73 S.Ct. at 897. However, the Supreme Court noted that "the case may nevertheless be moot if defendant demonstrates there is no reasonable expectation that the wrong will be repeated." Id. at 633, 73 S.Ct. at 897. Defendants repealed Old Chapter 35 and enacted a completely new chapter relating to sign regulation. While Plaintiff may contend New Chapter 35 suffers the same Constitutional infirmities as Old Chapter 35, Old Chapter 35 no longer exists. Thus, there is no reasonable expectation that the specific wrongs committed by the City of Ladue pursuant to *1566 Old Chapter 35 and found unconstitutional by this Court can be repeated in view of that chapter's repeal. Therefore, any arguments pertaining exclusively to Old Chapter 35 are moot.
This Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. at 2509. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256, 106 S.Ct. at 2514.
In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255, 106 S.Ct. at 2513. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249, 106 S.Ct. at 2510.
The standard for determining whether a permanent injunction should issue is essentially the same as the standard for a preliminary injunction, with the exception that the Court determines the merits rather than Plaintiff's likelihood of success on the merits. Current-Jacks Ford Canoe Rental Ass'n v. Clark, 603 F.Supp. 421, 424-25 (E.D.Mo.1985). The Court must also consider (1) whether the moving party will suffer irreparable injury absent the injunction; (2) the injury to the moving party as balanced against the harm to the other party should the injunction issue; and (3) the effect on the public interest. Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981).
New Chapter 35 generally prohibits all signs and billboards within Ladue. Article II, § 35-2.[2] New Chapter 35 provides for a limited number of exceptions to this general prohibition.[3] The new chapter *1567 adds a lengthy section in Article I entitled "Declaration of Findings, Policies, Interests, and Purposes." New Chapter 35 also includes § 35-24 providing for severability of parts of the chapter.
Defendants maintain that Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) represents a dramatic change in First Amendment jurisprudence. (Defendants' Suggestions in Support p. 13). The regulation in Ward required performers to use sound-amplification equipment and a sound technician provided by the city when performing at the Bandshell, a public facility in New York City's Central Park. Ward, 109 S.Ct. at 2750. After the Court of Appeals reversed the District Court's decision that the regulation was a valid time, manner, and place regulation, the Supreme Court granted certiorari "to clarify the legal standard applicable to governmental regulation of the time, place, or manner of protected speech." Id. at 2753. The Court recognized the Bandshell as a "public forum for performances in which the government's right to regulate expression is subject to the protections of the First Amendment." Id. The Court noted that even in a public forum government may impose time, place, or manner restrictions if the restrictions (1) are justified without reference to the content of the regulated speech; (2) are narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels for communication. Id., quoting, Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). The Court stated that the principal inquiry in determining content-neutrality is whether the government has adopted a regulation of speech because of disagreement with the message. Id. 109 S.Ct. at 2754. The Ward Court elaborated:
Government regulation of expressive activity is content-neutral so long as it is `justified without reference to the content of the regulated speech.'
Id., quoting Clark, 468 U.S. at 293, 104 S.Ct. at 3069.[4]
Article I of New Chapter 35 sets forth in detail the purposes of the ordinance. Ladue reiterates its interests in privacy, aesthetics, safety, and maintaining property values. The Article concludes:
IT IS HEREBY DECLARED that the City of Ladue opposes discrimination based upon the content of any lawful speech or expression and that the provisions of this chapter are not intended and shall not be interpreted so as to permit any such discrimination.
Art. I, New Chapter 35. While the declarations of purpose may list recognized government interests for regulation, the regulations themselves are explicit content-based exceptions to a general prohibition of signs. Unlike the regulation in Ward that sought only to regulate the volume of the protected speech, not the content or even the specific technical mix of the music,[5] New Chapter 35 specifically looks to the content to identify exceptions to a general prohibition of all signs. New Chapter 35 suffers the same infirmities as Old Chapter 35 in that it prefers some protected speech to other speech based on content. The City thus retains in New Chapter 35 the same basic regulatory scheme as contained in the now-repealed Old Chapter 35.
The general principles of law stated in the order of this Court granting Plaintiff's request for preliminary injunction with respect to Old Chapter 35 apply as well to New Chapter 35. Pages 4-11 of the order of this Court filed January 7, 1991, as they relate to legal analysis and not to specific references to Old Chapter 35, are incorporated herein. For the reasons stated in *1568 this Order and in the Order of this Court filed January 7, 1991, New Chapter 35, Article II, Section 35-2; Section 35-4; Section 35-5 the first sentence only as it specifies identification signs; Section 35-5 the second sentence beginning with "shall be limited ..." and ending with "other functions"; Section 35-5 the third sentence as it relates to limitations on announcements; Section 35-8(b) the first sentence beginning with "giving only the name ..." and ending at the end of the first sentence; Section 35-8(b) the words "and content" in the second sentence; and Section 35-10 are unconstitutional on their face. Having found the Plaintiff prevails on the merits and that Plaintiff will suffer irreparable harm absent the injunction and that the injunction is in the best interests of the public, this Court shall issue a permanent injunction.
Accordingly,
IT IS HEREBY ORDERED that Defendants' motion for summary judgment seeking a declaration that New Chapter 35 is constitutional is DENIED.
IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment is GRANTED.
IT IS FURTHER ORDERED that an injunction issue restraining Defendants from enforcing New Chapter 35, Article II, Section 35-2; Section 35-4; Section 35-5 the first sentence only as it specifies identification signs; Section 35-5 the second sentence beginning with "shall be limited ..." and ending with "other functions"; Section 35-5 the third sentence as it relates to limitations on announcements; Section 35-8(b) the first sentence beginning with "giving only the name ..." and ending at the end of the first sentence; Section 35-8(b) the words "and content" in the second sentence; and Section 35-10.
NOTES
[1] New Chapter 35 was amended on February 25, 1991.
[2] Section 35-2 states:

No sign shall be erected, constructed, painted, placed, enlarged, maintained, changed or relocated except in conformity with the provisions of this chapter.
[3] Section 35-4 provides:

Subject to the applicable regulations hereinafter described, the following types of signs are permitted in the City of Ladue:
a) Municipal signs but said signs shall not be greater than nine (9) square feet.
b) Subdivision and residence identification signs of a permanent character but said signs shall not be greater than six (6) square feet and said residence identification signs shall not be greater than one (1) square foot.
c) Road signs and driveway signs for danger, direction, or identification but said signs shall not be greater than twelve (12) square feet.
d) Health inspection signs but said signs shall not be greater than two (2) square feet.
e) Signs for churches, religious institutions, and schools subject to the restrictions described in Sec. 35-5.
f) Identification signs for not-for-profit organizations not otherwise described herein but said signs shall not be greater than sixteen (16) square feet.
g) Signs identifying the location of public transportation stops but said signs shall not be greater than three (3) square feet.
h) Ground signs advertising the sale or rental of real property subject to the restrictions described in Sec. 35-10.
i) Commercial signs in commercially zoned or industrial zoned districts subject to the restrictions as to size, location, and time of placement hereinafter described.
j) Signs identifying safety hazards but said sign shall not be greater than twelve (12) square feet.
[4] Ward elaborates on the other two prongs of the test, but it is not necessary to reach those prongs in this decision.
[5] The majority in Ward noted

Any governmental attempt to serve purely aesthetic goals by imposing subjective standards of acceptable sound mix on performers would raise serious First Amendment concerns, but this case provides us with no opportunity to address those questions.
Ward, 109 S.Ct. at 2754-55.