860 F.Supp. 659 (1994)
SHERWOOD FORD, INC., et al., Plaintiffs/Counterclaim Defendants,
v.
FORD MOTOR COMPANY, et al., Defendants/Counterclaim Plaintiffs,
v.
Ken BERDOS, et al., etc., Counterclaim Defendants.
No. 4:93CV 2540 SNL.
United States District Court, E.D. Missouri, Eastern Division.
August 8, 1994.
*660 Ferne P. Wolf, Carr and Korein, St. Louis, MO, Eugene Isaak, Lexington, MA, for Sherwood Ford, Inc., J. Curt Wells.
Kurt David Williams, Kurt D. Williams, George E. Feldmiller, George E. Feldmiller, Stinson and Mag, Kansas City, MO, for Ford Motor Co., Ford Leasing Development Co.
David M. Dolan, President, L. Joseph Garavaglia, Vatterott and Shaffar, Saint Ann, MO, for Ken Berdos, Joanne Berdos.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court upon defendants' Motion for Summary Judgment. The case is set for hearing on August 22, 1994 on all claims for preliminary and permanent injunctive relief. In the present matter, plaintiffs filed a Complaint alleging defendants': (1) violation of the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221, et seq.; (2) breach of contract; (3) deceit; (4) breach of the obligation of good faith and fair dealing; (5) negligent misrepresentation; (6) breach of fiduciary duty; (7) violation of the Missouri Vehicle Franchise Practices Act, Mo.Rev.Stat. § 407.810, et seq.; and (8) interference with advantageous business relations. Defendants move for summary judgment with respect to plaintiffs' Motions for Preliminary and Permanent Injunctions regarding said claims. In addition, defendants move for summary judgment with respect to the claims for injunctive relief in their Counterclaim, specifically Counts I (trademark infringement under the Lanham Act), II (trademark dilution under the Missouri Anti-Dilution Statute) and VI (specific performance of contract). Plaintiffs oppose said motion.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
*661 Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of defendants' Motion for Summary Judgment.
In determining whether preliminary injunctive relief should issue, a Court should consider:
(1) the threat of irreparable harm; (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.
Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981). The standard for determining whether a permanent injunction should issue is essentially the same as the standard for a preliminary injunction, except that the Court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits. Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987) (citation omitted); Gilleo v. City of Ladue, 774 F.Supp. 1564, 1566 (E.D.Mo.1991) (citation omitted).
After reviewing the evidence and the memoranda filed by the parties, it is the opinion of this Court that there are genuine issues of material fact with respect to the parties' claims for injunctive relief, with the exception of one matter, defendants' claim in Count VI for specific performance of contract. As to the issues in which there exist genuine issues of material fact, summary judgment is inappropriate and the hearing set for August 22, 1994 is necessary.
In Count VI of defendants' Counterclaim, defendants allege that defendant Ford Leasing was granted a right of first refusal by counterclaim defendants Kenneth C. Berdos and Joanne J. Berdos (hereinafter "Berdos") to purchase the property upon which the Sherwood Ford dealership is located. Defendants further allege that Berdos violated said agreement by selling the property to plaintiff Curt Wells. Defendants move for summary judgment with respect to their claims of specific performance of said contract in Count VI. Plaintiffs oppose said motion, arguing that Ford Leasing's right of first refusal is unenforceable because: (1) the right of first refusal violates state and federal law; (2) the right of first refusal was terminated by merger of Ford Leasing's property interests; and (3) Ford Leasing is not entitled to specific performance of the right of first refusal.
Based upon the evidence before the Court, it is the opinion of this Court that the following findings of fact should be entered with respect to this issue. On March 12, 1973, defendant Ford Leasing entered into a Purchase Agreement with Berdos to sell real estate and facilities to Berdos, upon which the Sherwood dealership is located. Section 13 of the Purchase Agreement granted to Ford Leasing a right of first refusal to purchase *662 the property from Berdos and required Berdos to give Ford Leasing prior written notice of any proposed sale of the property.
Prior to October, 1992, plaintiff Wells knew of the Purchase Agreement between Ford Leasing and Berdos, and Wells knew that the Purchase Agreement provided Ford Leasing with a right of first refusal to purchase the property. On October 22, 1992, plaintiff Wells and Berdos discussed Ford Leasing's right of first refusal and plaintiff Wells purchased the property from Berdos for approximately $613,000.00. Wells and Berdos agreed that "the worst that could happen is that Ford would get the property and that [Wells] would get his money back." K. Berdos Affid. at ¶ 10.
Berdos did not provide Ford Leasing with prior written notice of the proposed sale of the property to Wells, thereby violating the terms and provisions of § 13 of the Purchase Agreement. Ford Leasing did not learn of the sale until after it had occurred. At that time, P. Lehr informed Ken Berdos that the sale was in violation of Ford Leasing's right of first refusal. Ford Leasing would have exercised its right of first refusal to purchase the property on the terms and conditions offered by Berdos to Wells. Ford Leasing is ready, willing and able to tender the purchase price paid by Wells for the property.
In Missouri, it is well-settled that an option to purchase and right of first refusal are covenants which run with the land. C & J Delivery v. Vinyard & Lee Partners, 647 S.W.2d 564, 569 (Mo.Ct.App.1983). "As such they are binding on a purchaser of the reversion charged with notice of the lease. A purchaser for value takes subject to the lease and the covenants therein if he has actual or constructive knowledge of it." Id.
In Barling v. Horn, 296 S.W.2d 94 (Mo. 1956), the Missouri Supreme Court, sitting in equity, entered a decree of specific performance under facts very similar to those before this Court. In Barling, as in this case, the lease provided the lessees, the Barlings, with a right of first refusal to purchase the property. Id. at 95. The Horns owned the property and were the lessors. The Horns offered the property to the Barlings at a purchase price of $30,000.00, which the Barlings declined. Id. Subsequently, however, the Horns sold the property to a third party, the Smiths, for $26,000.00. Although the Horns and the Smiths knew of the Barlings' right of first refusal, they did not give the Barlings the opportunity to purchase the property on the same terms and conditions which were provided to the Smiths. Id. at 96.
Finding that the Horns had failed to comply with their obligations under the lease to provide the Barlings with a right of first refusal and that the third-party buyer, the Smiths, knew of the Barlings' right of first refusal, the Missouri Supreme Court stated:
[W]e shall treat with the case as if defendants Horn had done what they were obligated to do and should have done; that is, we, sitting as a court of equity, shall determine the rights of the parties as if defendants Horn had offered the property to plaintiffs at the price and on the terms defendants Horns were willing to sell.
Id. at 98. The Court concluded that the Barlings would have exercised their right of first refusal if they had been given the opportunity. The Court, therefore, ordered that the Smiths tender title to the property upon payment by the Barlings of the amount that the Smiths had paid. Id. at 99.
In the present matter, the evidence is very similar to the facts stated in Barling. Plaintiffs' argue, however, that the Court should not order specific performance of the provision for a number of reasons. The Court will only address two of plaintiffs' arguments. First, plaintiffs argue that Ford Leasing's right of first refusal is unenforceable as an "ancillary agreement" in violation of Mo.Rev.Stat. § 407.825(12). The Court rejects this argument, however, because the right of first refusal at issue in this matter is an agreement between Ford Leasing and Berdos which was entered into in 1973 and, therefore, the right of first refusal is not an ancillary agreement between defendants and Wells, but a valid pre-existing agreement between Ford Leasing and Berdos. Second, plaintiffs argue that the Court should not grant defendants specific performance because defendants' motives in exercising the *663 right of first refusal are improper. Although there are still many issues in dispute with respect to plaintiffs' and defendants' claims, it is the opinion of this Court that plaintiffs have failed to present evidence which would indicate that defendants have attempted to exercise their right of first refusal for any improper motive. The Court must determine, pursuant to Barling, whether Ford Leasing would have lawfully exercised its right of first refusal had it been given the opportunity to do so. It is the opinion of this Court that Ford Leasing could have and would have done so without improper motives.
Thus, it is the opinion of this Court that defendants' Motion for Summary Judgment should be granted with respect to defendants' claim for injunctive relief set forth in Count VI of defendants' Counterclaim because there are no genuine issues of material fact and because defendants are entitled to judgment as a matter of law in that defendant Ford Leasing had a right of first refusal to purchase the property upon which the Sherwood dealership is located, of which plaintiff Wells and counterclaim defendant Berdos were aware, and Ford Leasing was not given the opportunity to exercise said right prior to Wells' purchase of said property.

ORDER
In accordance with the Memorandum filed herein this day,
IT IS HEREBY ORDERED that defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Summary judgment is hereby entered in favor of defendants and against plaintiffs and counterclaim defendants on the claim for equitable relief in Count VI of defendants' Counterclaim.
IT IS FURTHER ORDERED that plaintiff Wells is hereby ordered to execute and deliver a warranty deed conveying the described real property to defendant Ford Leasing upon payment within thirty days by defendant Ford Leasing to plaintiff Wells of the amount paid by plaintiff Wells to counterclaim defendants Ken and Joanne Berdos with interest on such amount at a rate allowed by law from the time of such payment.